UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
　　　　　　　　　　　　　　　　　　　　　　　　　:
**KAREN HICKEY-MACH**,　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Plaintiff,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:　**MEMORANDUM DECISION AND**
　　　　　– against –　　　　　　　　　　　　　　　:　**ORDER**
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:　24-CV-8410 (AMD) (LKE)
**MICHELE RAFFERTY**, **JOHN RAFFERTY**,　　　　　 :
and **CITY OF NEW YORK**,　　　　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Defendants.　　　　　　　　:
-------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff brings civil rights claims against Michele and John Rafferty pursuant to 42 U.S.C. § 1983 for violations of the Fourth, Fifth, and Fourteenth Amendments to the United State Constitution.[1] The plaintiff also brings state law claims for civil conspiracy, intentional infliction of emotional distress, and negligent infliction of emotional distress. Before the Court is the defendants' motion to dismiss the complaint, or for judgment on the pleadings. As explained below, the motion is granted as to the federal claims. The Court declines to exercise supplemental jurisdiction over the state law claims.

## BACKGROUND

John Rafferty, a retired New York Police Department (NYPD) lieutenant, started a security company, Watch Guard 24/7 LLC ("Watch Guard"), in 2009. (ECF No. 13 ¶ 8.) His wife Michele is Watch Guard's Executive Vice President and Chief Financial Officer. (*Id.* ¶ 7.) As a retired police officer, John Rafferty had "an intimate familiarity with how the criminal

---

[1] The plaintiff also sued the City of New York but voluntarily dismissed the case against the City on May 19, 2025. (ECF No. 27.)

justice system works," including "knowledge of how easy it is to have a person arrested on a *mere allegation* of what may be a crime, or in this case, *outright lies*." (*Id.* ¶¶ 9, 14 (emphasis in original).)

The plaintiff's child attended Our Lady of Hope Catholic Academy, which hired Watch Guard for security. (*Id.* ¶ 11.) During the 2022–2023 school year, the plaintiff learned that Watch Guard allowed a music teacher with an arrest "for putting his hands on a child" onto school grounds. (*Id.*) The plaintiff expressed her concerns "about what she believed to be the failings of the [defendants] by and through their security company." (*Id.* ¶ 12.) This "irritated" the defendants, who then "conspired to concoct an ill-conceived and wicked plan to retaliate against" the plaintiff. (*Id.* ¶ 13.)

According to the plaintiff, the defendants caused her to be arrested falsely by "concoct[ing]" stories about her. (*Id.* ¶ 15.) First, Michele Rafferty, acting on her husband's advice, told "law enforcement" that the plaintiff "[took] out brass knuckles from her pocket" and "point[ed] it at [Michele Rafferty's] direction." (*Id.*) The plaintiff was arrested at her home, and "was humiliated and horrified as her two young children were screaming and crying, watching their mother being taken from their family home by police." (*Id.* ¶ 16.) Michele Rafferty later changed her story and said that the plaintiff "[took] out brass knuckles from her pocket," "point[ed] it at [her] direction," and held the "knuckles up to [Michele Rafferty's] face." (*Id.* ¶ 17.) This version of the story was reflected in an August 31, 2023 superseding information that Detective Christopher Gerardi signed. (*Id.*) On September 8, 2023, Michele Rafferty signed a supporting deposition in which she swore that the statements in the superseding information were true. (*Id.* ¶ 19.)

2

As part of their plan to "to intimidate and harass" the plaintiff and her family while the criminal case was pending in Queens County, the defendants and Watch Guard sued the plaintiff on September 26, 2023, with the help of Joel Thomas, a lawyer at the law firm Silberstein, Awad & Miklos, P.C. (*Id.* ¶¶ 18, 20.)[2] The defendants alleged a third version of events in that action: that the plaintiff "pulled out brass knuckles and another weapon with spikes." (*Id.* ¶ 21.)

Aharon Diaz and Katerina Michelle Martinez Valez from the Queens County District Attorney's Office (QCDA) handled the plaintiff's criminal case. (*Id.* ¶ 25.)[3] In an affirmation opposing the plaintiff's motion to dismiss the criminal case, Diaz and Velez said that Michele Rafferty had been "cooperative, engaged, and involved in every step of the instant case." (*Id.* ¶ 26.) The prosecution filed a Certificate of Compliance and Statement of Readiness, but Judge Maria T. Gonzalez dismissed the criminal case on September 15, 2024, because the prosecution "failed to ascertain and disclose known discoverable items that were in their possession prior to the filing;" accordingly, the prosecution's readiness filing was invalid. (*Id.* ¶ 28.)

The plaintiff claims that the defendants' action in the criminal case forced her "to suffer the humiliation of appearing in criminal court, with a walker and cane, on more than seven occasions, and while in a frail and sick state, including suffering from blood cancer." (*Id.* ¶ 30.) She was afraid to leave her home while the criminal case was pending, because she worried that the defendants would call the police and "make up another story about [her] doing something nefarious." (*Id.* ¶ 32.)

---

[2] *See* Index Number 719904/2023.

[3] The plaintiff alleges that Valez was not admitted to practice law in New York until March 20, 2024, so she was not a lawyer at the time she worked on the plaintiff's criminal case. (ECF No. 13 ¶ 24 n.1.)

On December 8, 2024, the plaintiff brought this action against the Raffertys and the City of New York.  (ECF No. 13.)[4]  She brought six claims under Section 1983 for deprivation of due process and denial of a fair trial, malicious prosecution, abuse of process, aiding and abetting, false arrest, and a *Monell* claim against the City of New York.  (*Id.*)[5]  She also brought state law claims for civil conspiracy, intentional infliction of emotional distress, and negligent infliction of emotional distress.  (*Id.*)  She seeks compensatory and punitive damages, pre-judgment and post-judgment interest, costs, and attorneys' fees.  (*Id.*)  The defendants moved to dismiss the complaint, or alternatively, for judgment on the pleadings.  (ECF No. 30.)[6]  They argue that the plaintiff's Section 1983 claims must be dismissed because she did not adequately plead that the defendants were state actors or acting under color of state law.  (*Id.* at 7–10.)  They also argue that the intentional and negligent infliction of emotion distress claims must be dismissed as duplicative of the plaintiff's other claims.  (*Id.* at 11–12.)  Finally, they argue that the civil conspiracy claim should be dismissed for failure to state a claim.  (*Id.* at 12.)

## LEGAL STANDARD

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft*

---

[4] The plaintiff amended the complaint on January 7, 2025.  (ECF No. 13.)

[5] In her opposition to the defendants' motion to dismiss, the plaintiff voluntarily withdrew aiding and abetting and abuse of process claims.  (ECF No. 32 at 12.)  In addition, as explained above, she voluntarily dismissed the claims against the City.

[6] The defendants move in the alternative for judgment on the pleadings because "they were required to answer the Amended Complaint due to Plaintiff's counsel refusing to grant the [defendants] an extension of time to respond to the Amended Complaint."  (ECF No. 30 at 6.)

4

*v. Iqbal*, 556 U.S. 662, 678 (2009)).  While "detailed factual allegations" are not required, a complaint must plead "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545.  A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (alteration and citation omitted).  Pleadings are construed in the light most favorable to the plaintiff.  *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)).

## DISCUSSION

### I. State Action

Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must allege (1) the deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States," and (2) that the deprivation was "committed by a person acting under the color of state law." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994)).  Section 1983 "is not itself a source of substantive rights" but "merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)).

5

"It is axiomatic that private citizens and entities are not generally subject to Section 1983 liability." *Anilao v. Spota*, 774 F. Supp. 2d 457, 497 (E.D.N.Y. 2011), *aff'd*, 27 F.4th 855 (2d Cir. 2022). However, the Second Circuit has articulated circumstances in which the actions of private individuals or entities can be attributed to the state: (1) "the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test');" (2) "the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test');" or (3) "the entity 'has been delegated a public function by the [s]tate' ('the public function test')." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001)). The plaintiff "bears the burden of proof on the state action issue." *Hadges v. Yonkers Racing Corp.*, 918 F.2d 1079, 1083 n.3 (2d Cir. 1990).

The joint action test is the most logical fit with the plaintiff's claims that the defendants gave false information to the NYPD, which used the information to arrest the plaintiff and charge her criminally. Under the "joint action" doctrine, a "private actor may be considered to be acting under the color of state law for purposes of § 1983 if the private actor was 'a willful participant in joint activity with the State or its agents.'" *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 195 (E.D.N.Y. 2010) (quoting *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002)). "The touchstone of joint action is often a plan, prearrangement, conspiracy, custom, or policy shared by the private actor and the police." *Anilao*, 774 F. Supp. 2d at 498 (citation omitted). "To establish joint action, a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must

6

agree to deprive the plaintiff of rights guaranteed by federal law." *Id.* (quoting *Bang v. Utopia Restaurant*, 923 F. Supp. 46, 49 (S.D.N.Y.1996)).

"This potential liability also applies to a private party who 'conspires with a state official to violate the plaintiff's constitutional rights.'" *Young*, 705 F. Supp. 2d at 195–96 (quoting *Fisk v. Letterman*, 401 F. Supp. 2d 362, 378 (S.D.N.Y. 2005)). "[T]o demonstrate that a private party defendant was a state actor engaged in a conspiracy with other state actors under § 1983, a plaintiff must allege (1) an agreement between the private party and state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal." *Id.* at 197. "Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed." *Id.* "[I]f a plaintiff has sufficiently pled either the existence of joint activity between the private actor and the state or the existence of a conspiracy between the private actors and the government actors, he will have sufficiently alleged state action by the private party defendants for purposes of § 1983." *Anilao*, 774 F. Supp. 2d at 499. "In other words, although pleading sufficient facts to demonstrate that a conspiracy exists will suffice to establish that a private entity was acting under color of state law, '[t]he formal requirements of a conspiracy . . . are not required to fulfill the joint engagement theory.'" *Id.* (quoting *Weintraub v. Bd. of Educ. of New York*, 423 F. Supp. 2d 38, 57 (E.D.N.Y. 2006)).

"The provision of information to or summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983." *Young*, 705 F. Supp. 2d at 196. "Similarly, if a police officer's actions are due to the officer's own initiative, rather than the directive of a private party, the private party will not be deemed a state actor." *Id.* Rather, a private actor must take a "more active role" to be found to be a state actor. *Id.*

7

In *Borisova v. Friberg*, this Court found that the plaintiff adequately pled that Friberg was acting under color of state law.  No. 18-CV-7440, 2020 WL 5752073, at *4 (E.D.N.Y. Sept. 25, 2020).  The complaint alleged that Friberg was "'under contract' with the NYPD and conduct[ed] investigations into counterfeit goods," and that a police officer arrested the plaintiff "because Friberg . . . told her that he recognized that her goods bore 'imitation' trademarks."  *Id.*  The plaintiff asserted that "Friberg came into [the plaintiff's] store, looked around, and left," "returned later with two police officers and accused the plaintiff of selling counterfeit goods," "stepped behind the counter and began 'opening drawers and examining their contents,'" and "directed [the officers] to collect large shopping bags, pointed out allegedly counterfeit items and directed the officers to place them in bags."  *Id.*  The Court held that although the defendants "describe[d] Friberg as a witness reporting a crime," the complaint in fact "describe[ed] more active participation."  *Id.*

Similarly, in *Anilao v. Spota*, the court found that the complaint sufficiently alleged that certain private defendants were state actors where they "arranged a meeting with" the district attorney that "was for the purpose of, and had the effect of, pressuring [the district attorney] to file an indictment that he would not otherwise have filed, against the plaintiffs."  774 F. Supp. 2d at 500.  After the meeting, the district attorney assigned an assistant district attorney to the case "for the purpose of gathering evidence and securing an indictment."  *Id.*  The plaintiffs also alleged that the private defendants and the county defendants agreed that the indictment would be "procured, in part, through the use of false testimony by the [defendants], as well as by the withholding of exculpatory evidence, the existence of which was known" to the defendants.  *Id.*  The plaintiffs alleged that pursuant to this agreement, some of the defendants "provided false testimony before the Grand Jury" knowing it was not true, "and, as a general matter, 'agreed to

8

do what was necessary to procure the indictment, for the sole benefit of the [defendants].'" *Id.* at 501.  In addition, the plaintiffs alleged that the district attorney would not have initiated the prosecution without the private defendants' influence, in part because of the private defendants' political power.  *Id.*  The court found that these specific and detailed allegations established that the defendants "did more than 'merely elicit' an exercise of state authority;" they "incited the exercise of state authority by pressuring the County defendants to take action to satisfy [their] goals and for [their] sole benefit, and then joined and participated in the exercise of that authority" by agreeing to present false testimony and then giving such false testimony.  *Id.*  The same was not true for two other private defendants, because the complaint alleged only that they filed complaints against the plaintiffs with the New York State Education Department and the Suffolk County Police Department.  *Id.* at 503.[7]

There are only two allegations in the amended complaint that could possibly suggest joint action between both defendants and the state.  As for John Rafferty, the plaintiff claims that he used his "intimate familiarity" with the criminal justice system to advise Michele Rafferty to make a false report about the plaintiff to law enforcement.  (ECF No. 13 ¶¶ 9, 14.)  As for Michele Rafferty, the plaintiff cites an assistant district attorney's affirmation that Michele Rafferty was "cooperative, engaged, and involved in every step of the instant case."  (*Id.* ¶ 26.)

The defendants say that the complaint must be dismissed because it does not allege that the QCDA "shared a 'common goal' with the Raffertys to allegedly violate the Plaintiff's rights."  (ECF No. 30 at 7.)  They also claim that the complaint does not allege an agreement between the defendants and the QCDA, and that the "only plausible reading of the allegations in

---

[7] The court also noted that these defendants filed their complaints before "the formation of the conspiracy," which allegedly began when the defendants met with the district attorney.  *Anilao*, 774 F. Supp. 2d at 503.

9

the Amended Complaint against the Raffertys is that they allegedly acted alone." (*Id.* at 9.) Moreover, they say, John Rafferty's career with NYPD has no "meaningful legal purpose," because "simply having knowledge of how the 'legal system' functions does not amount to an agreement with the QCDA to violate Plaintiff's constitutional rights." (*Id.* at 10.) The plaintiff responds in a single paragraph that Michele Raffery was "cooperative, engaged, and involved in every step" of the criminal case, and that "[c]learly, engaging and being involved in every step of the criminal proceeding instigated by the" defendants is sufficient. (ECF No. 32 at 7–8.)

The amended complaint does not sufficiently allege joint action between the defendants and state officials. The plaintiff does not allege that the prosecutors "substituted [the defendants'] judgment for [their] own," *see Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272–73 (2d Cir. 1999) (quoting *Alexis v. McDonald's Restaurants of Massachusetts, Inc.*, 67 F.3d 341, 352 (1st Cir. 1995)), or that the defendants "actually participated in [her] arrest," *see Mara v. MacNamara*, No. 14-CV-1095, 2015 WL 4392956, at *4 (D. Conn. July 15, 2015). Moreover, although the plaintiff claims that John and Michele Rafferty "conspired" with each other against her (*see, e.g.*, ECF No. 13 ¶¶ 13–14, 47), she does not allege a conspiracy or agreement with a state official "to deprive [her] of rights guaranteed by federal law." *Anilao*, 774 F. Supp. 2d at 498.

Nor are the other claims about the defendants sufficient. The claims about John Rafferty are based entirely on his career as a police officer, and his knowledge of the "criminal justice system." (*Id.* ¶¶ 9, 32.) There are no allegations about anything that he did or said, aside from the speculation that he passed on his knowledge to his wife, and no allegations that he even met with the arresting officers in the case or with the prosecutors, let alone that he directed them and

10

worked with them, as Friberg did in *Borisova*, or that he pressured them, as the defendants did in *Anilao*.

While the complaint has slightly more factual detail about Michele Rafferty — that she reported the plaintiff to the police and signed the supporting deposition — the complaint does not include any facts to suggest that she directed or pressured law enforcement officials. The fact that she provided information and may have been a cooperative witness, as the prosecutor's affirmation stated, does not make her a state actor. *See Carrillos v. Inc. Vill. of Hempstead*, 87 F. Supp. 3d 357, 371 (E.D.N.Y. 2015) ("[T]he provision of information to police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of Section 1983."); *Sherman v. City of New York*, No. 18-CV-5359, 2019 WL 2164081, at *7 (E.D.N.Y. May 16, 2019) ("Plaintiff's allegations simply amount to the assertion that Eilenberg provided the officers with false information and the officers inappropriately accepted Eilenberg's version of events despite evidence to the contrary. This is patently insufficient to state a claim of joint action."); *United States v. Hanratty*, No. 24-CR-153, 2024 WL 4892742, at *3 (S.D.N.Y. Nov. 26, 2024) ("That EBCC was eager to cooperate with the Government does not convert EBCC's conduct in the Civil Case into joint activity or state action."). Thus, the plaintiff's Section 1983 claims are dismissed for failure to plead that the deprivation was "committed by a person acting under the color of state law." *Cornejo*, 592 F.3d at 127.

## II.   Supplemental Jurisdiction

"[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)). The Court dismisses all the federal claims over which it has original jurisdiction, and declines to exercise supplemental

11

jurisdiction over the plaintiff's remaining state law claims alleging civil conspiracy, intentional infliction of emotional distress, and negligent infliction of emotional distress. *See Kolari*, 455 F.3d at 123 ("Plaintiffs' federal-law claims were eliminated on a motion to dismiss, prior to the investment of significant judicial resources, and we can discern no extraordinary inconvenience or inequity occasioned by permitting the claims to be refiled in state court where they will be afforded a 'surer-footed reading of applicable law.'" (*quoting United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))).

## CONCLUSION

For these reasons, the motion to dismiss is granted, and the complaint is dismissed. The Clerk of Court is respectfully directed to enter judgment and close this case.

**SO ORDERED.**

s/Ann M. Donnelly
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      January 26, 2026